# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MNM INVESTMENTS, LLC,

    *Plaintiff,*

 vs.

HDM, INC. and DEREK MCCLOUD,

    *Defendants.*

Case No. 18-1267-EFM-KGG

HDM, INC.,

    *Counterclaim-Plaintiff*,

v.

MNM INVESTMENTS, LLC,
KANSAS MOTORCYCLE WORKS, LLC,
and MATTHEW MOORE,

    *Counterclaim-Defendants*.

## MEMORANDUM AND ORDER

Plaintiff MNM Investments, LLC ("MNM") contends that it is the owner of intellectual property associated with the manufacture of high-end motorcycles under the "Big Dog Motorcycles" brand. MNM brought this action against Defendants HDM, Inc. ("HDM") and Derek McCloud asserting claims of trademark infringement, trademark counterfeiting, and breach of contract. In response, HDM asserted 10 counterclaims against MNM, Matthew Moore (one of MNM's principals) and Kansas Motorcycle Works, LLC (a related entity) (collectively

"Counterclaim Defendants"). This matter comes before the Court on Counterclaim Defendants' Motion for Partial Judgment on the Pleadings (Doc. 44). Counterclaim Defendants ask the Court to dismiss HDM's breach of contract, unjust enrichment, and defamation counterclaims. For the following reasons, the Court grants Counterclaim Defendants' motion.

**I.     Factual and Procedural Background**[1]

In 2003, HDM entered a business relationship with Big Dog Motorcycles, LLC ("Old Big Dog") and began selling Big Dog branded motorcycle parts and accessories. From 2003 to 2011, HDM was Old Big Dog's sole liquidator of excess parts and accessories. This relationship continued until early 2011 when Old Big Dog announced that it was insolvent and that it was going to stop all motorcycle production and support of its dealer network.

During that time, HDM dealt with Matthew Moore, who was then an Old Big Dog employee. In 2012 Moore left Old Big Dog to start Kansas Motorcycle Works, LLC ("KMW") with the intention of building his own custom motorcycles. HDM cooperated with Moore by selling him parts and accessories from its inventory and allowing KMW to sell parts through HDM's website to improve its cash flow. During this time, Moore told HDM that he did not intend on supporting Old Big Dog's existing owner base by providing parts or honoring a warranty service. Instead, he planned on building his own custom motorcycles.

In October 2013, Intrust Bank, N.A. ("Intrust") foreclosed on its loans to Old Big Dog and took over its assets the bank held as collateral. Approximately three months later, on January 9, 2014, Intrust executed a bill of sale to HDM, transferring all equipment and personal property at

---

[1] For purposes of this motion, the Court presents the facts as alleged in HDM's First Amended Counterclaims.

Old Big Dog's address to HDM. This included Old Big Dog's existing parts, accessories, office furniture, tooling, and computers needed to manufacture Old Big Dog parts.

Around the same time, Moore began trying to acquire the "BDM" and "Big Dog Motorcycle" trademarks associated with Old Big Dog's business. In 2014, two other entities related to Old Big Dog—Wichita Motorcycles, LLC, and Motorcycle Enterprises, LLC—owned the trademarks. In October 2014, these entities purportedly transferred ownership of these marks to Intrust, who purportedly transferred ownership of these marks to MNM. HDM contends that none of these assignments were valid, and thus, MNM never obtained ownership of the trademarks.

After its purchase of Old Big Dog in January 2014, HDM continued to sell Old Big Dog branded replacement parts and accessories. It also took over the task of protecting the "Big Dog" brand. HDM and its employees spent hundreds of hours identifying fake or unauthorized Old Big Dog merchandise offered for sale on various outlet sites, ensuring that they were taken down. HDM also agreed to pay legal fees associated with pursuing infringers of the "Big Dog" brand.

At the same time, Moore continued to operate KMW, which was struggling financially. In 2015, HDM helped Moore build a new prototype motorcycle by supplying him with Old Big Dog parts. After the initial motorcycle was built, HDM and KMW agreed to partner in the building of seven more motorcycles, which KMW sold during the remainder of 2015. KMW and HDM then agreed via handshake that HDM would provide Old Big Dog parts for 60 motorcycles. HDM manufactured these parts using the designs and tooling it acquired as part of Old Big Dog's liquidation.

In mid-2015, without HDM's knowledge, Counterclaim Defendants launched a website titled BigDogIsBack.com. The website claimed to have the inventory of all Big Dog parts even though they only had access to such parts from HDM. HDM alleges that Counterclaim Defendants

made these statements with the intent to create a false impression that they were building and selling Old Big Dog motorcycles, parts, and accessories. In June 2017, numerous Old Big Dog owners assembled in Wichita for a reunion. Matt Moore gave a speech to the assembled owners and claimed that KMW (and not HDM) was the one that protected the "Big Dog" brand by supplying parts and protecting the image of the brand. During another event at the reunion, Nick Moore—brother of Matt Moore and one of the owners of MNM and KMW—urged Old Big Dog customers not to buy parts from HDM and claimed HDM only has "used, dent [sic] and ding crap that they screwed out of the original Big Dog." Additionally, Counterclaim Defendants have advertised to potential eBay purchasers that their products are authentic while HDM's are "bootleg copies" and "Chinese imported copies."

HDM stopped supplying KMW in January 2018 after KMW fell behind on its payments to HDM and after HDM learned that KMW was allegedly representing itself as the supplier of Old Big Dog parts. In the following months, Counterclaim Defendants contacted one or more of HDM's suppliers claiming that they owned the rights to manufacture Old Big Dog parts.

KMW originally filed suit on September 25, 2018, against HDM and its principal Derek McCloud. Two days later KMW's affiliate—MNM—filed an Amended Complaint. MNM alleges that it entered into a license agreement with HDM in December 2014 granting HDM permission to use its "Big Dog" trademarks and other intellectual property in connection the manufacture of motorcycle parts.[2] MNM further alleges that since the expiration of that license agreement in November 2017, HDM has continued to manufacture and sell "Big Dog" branded

---

[2] The alleged license agreement granted HDM a license to use certain intellectual property in connection with the manufacture and sale of goods. Included within the intellectual property allegedly licensed to HDM was the federally registered "BDM" and "Big Dog Motorcycles" marks as well as a new "Big Dog Motorcycles" design mark that MNM registered with the United States Patent and Trademark Office.

products in violation of the agreement. MNM asserts claims for breach of contract, trademark infringement, and trademark counterfeiting. In their Answer, HDM and McCloud deny these allegations and assert that MNM is not the owner of the Big Dog trademarks and that it never entered into a license agreement with MNM. In addition, HDM asserted ten counterclaims against MNM, KMW and Matthew Moore.

The three counterclaims at issue here are Count I (breach of contract), Count II (unjust enrichment), and Count IV (defamation). The breach of contract and unjust enrichment claims both allege that HDM supplied Moore and KMW with parts and equipment to manufacture new motorcycles, including nine Mastiff frames, four Mastiff swingarms, one K-9 frame, one Pitbull frame, eight K-9 paint sets, and nine Mastiff paint sets. HDM further alleges that Moore and KMW did not pay for this equipment or return it to HDM per the parties' agreement. The equipment is also subject to a replevin action in the District Court of Rice County, Kansas. The defamation claim alleges that Counterclaim Defendants have knowingly communicated to third parties false and defamatory statements about HDM, including the statements within the eBay listings and those made by Nick Moore in June 2017. Counterclaim Defendants now ask the Court to dismiss these claims.

## II.     Legal Standard

**A.     Rule 12(b)(1) Standard of Review**

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."[3] A court lacking jurisdiction must dismiss the case regardless

---

[3] *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir.1994).

of the stage of the proceeding when it becomes apparent that jurisdiction is lacking.[4] The burden of proof is on the party asserting the court has jurisdiction.[5]

Rule 12(b)(1) motions take two forms: (1) a facial attack on the sufficiency of complaint's allegations as to the court's jurisdiction or (2) a factual attack on the facts upon which subject matter is based.[6] In reviewing a facial attack, a district court must accept the allegations in the complaint as true.[7] When reviewing a factual attack, a district court may not presume the truthfulness of the complaint's factual allegations. The court may allow affidavits and other document to resolve disputed jurisdictional facts under Rule 12(b)(1).[8]

## B.  Rule 12(c) Standard of Review

Counterclaim Defendants bring their motion pursuant to Fed. R. Civ. P. 12(c) because they have already filed an Answer in the case. Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed as long as the motion is made early enough not to delay trial.[9] The standard for dismissal under Rule 12(c) is the same as a dismissal under Rule 12(b)(6).[10] To survive a motion for judgment on the pleadings, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its

---

[4] *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).

[5] *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[6] *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).

[7] *Id*. at 1002.

[8] *Id*. at 1003 (citing *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325); *Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir.2003).

[9] Fed. R. Civ. P. 12(c).

[10] *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).

face."[11] All reasonable inferences from the pleadings are granted in favor of the non-moving party.[12] Judgment on the pleadings is appropriate when "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."[13] Documents attached to the pleadings are exhibits and may be considered in deciding a Rule 12(c) motion.[14]

### III. Analysis

Counterclaim Defendants seek to dispose of HDM's breach of contract, unjust enrichment, and defamation counterclaims. They contend that the Court lacks subject matter jurisdiction over all three claims because it cannot exercise supplemental jurisdiction under 28 U.S.C. § 1367(a). They also contend that the Court should dismiss the defamation claim because HDM has not stated a claim for relief that is plausible on its face.[15]

#### A. Supplemental Jurisdiction

The parties acknowledge that the counterclaims at issue are brought under state law and that the parties are all residents of Kansas. Therefore, the Court does not have original jurisdiction over the counterclaims under 28 U.S.C. § 1331 and § 1332. The parties dispute whether the Court may exercise supplemental jurisdiction over the counterclaims. A district court has discretion to

---

[11] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[12] *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (citation omitted).

[13] *Id.* (quotations marks and citation omitted).

[14] *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006), abrogated on other grounds by *Magnus, Inc. v. Diamond State Ins. Co.*, 545 F. App'x 750, 753 (10th Cir. 2013).

[15] Counterclaim Defendants also argue that the Court should dismiss the breach of contract and unjust enrichment claims under the *Colorado River* doctrine. The Court declines to address this argument because it concludes that it does not have subject matter jurisdiction over these claims.

exercise supplemental jurisdiction over state law claims that are sufficiently related to a pending federal claim.[16] 28 U.S.C. § 1367(a) provides the overarching test for when a district court may exercise supplemental jurisdiction. It states, in part: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Section 1367 is satisfied when the federal and state law claims "derive from a common nucleus of operative fact."[17] In determining whether to exercise supplemental jurisdiction, the district court "should consider retaining state claims when given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction."[18]

Counterclaim Defendants argue that the Court cannot exercise supplemental jurisdiction over HDM's breach of contract, unjust enrichment, and defamation claims because these counterclaims do not arise out of the same nucleus of operative fact as their trademark infringement claims. Counterclaim Defendants argue that the primary issues to be decided by the Court with respect to the trademark infringement claims are ownership of the "Big Dog" trademarks, the existence of a license agreement between MNM and HDM, and HDM's use of the "Big Dog" intellectual property in commerce. It further argues that these issues are irrelevant or completely unrelated to the issues to be resolved with respect to the breach of contract, unjust enrichment, and defamation claims. In response, HDM asserts that Counterclaim Defendants have over-simplified

---

[16] *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1220 (10th Cir. 2000).

[17] *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 164-65 (1997) (citation omitted).

[18] *Jones v. Addictive Behavioral Change Health Grp., LLC*, 2019 WL 399186, at *4 (D. Kan. 2019); *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013) (internal quotation marks and citation omitted).

this case into a dispute over trademark ownership. HDM asserts that the relevant "common nucleus of operative fact" is the parties' failed business relationship.

The Court agrees that the parties' claims arise out of a failed business relationship. But this does not mean the claims derive from a common nucleus of operative fact. The existence of a business relationship alone does not satisfy the common nucleus of operative fact test.[19]

Furthermore, "courts do not find a common nucleus of operative fact when there is little evidentiary overlap between the claims."[20] Here, there is little evidentiary overlap between the trademark infringement claims and HDM's breach of contract and unjust enrichment counterclaims. The trademark infringement claims rest on whether MNM owns the Old Big Dog marks, whether HDM and McCloud used the marks without consent, and whether HDM and McCloud's use of the marks is likely to cause confusion. From an evidentiary standpoint, these issues will be decided by the alleged 2014 sale and assignments of the Old Big Dog trademarks, the alleged license agreement between MNM Investments and HDM, and the parties' use of the trademarks in commerce. HDM's breach of contract and unjust enrichment counterclaims, on the other hand, revolve around the HDM and KMW's agreement to supply KMW with Old Big Dog parts—specifically the parts that are subject to a replevin action in Riley County, Kansas. This is a separate business arrangement unrelated to the alleged license agreement between HDM and MNM. The evidence for the breach of contract and unjust enrichment claims will involve

---

[19] *See, e.g., Kirby v. Tafco Emerald Coast, Inc.*, 2006 WL 228880, at *2 (N.D. Fla. 2006) (finding no supplemental jurisdiction where the only factual connection was the employer-employee relationship between the parties); *Wilhelm v. TLC Lawn Care, Inc.*, 2008 WL 640733, at *3 (D. Kan. 2008) (finding that an employer-employee relationship is not sufficient to satisfy the common nucleus of operative fact test); *Jones*, 2019 WL 399186, at *4 (same).

[20] *Hand v. Walnut Valley Sailing Club*, 2011 WL 2938109, at *2 (D. Kan. 2011) (citing *Wilhelm*, 2008 WL 640733, at *3).

communications, purchase orders, or invoices exchanged by the parties—none of which are relevant to the trademark infringement claims.

In addition, judicial economy would not be advanced by an exercise of jurisdiction. If the court exercised jurisdiction over breach of contract and unjust enrichment claims, it would complicate the proceedings because of the differing evidence for the federal and state law claims. The Court therefore declines to exercise supplemental jurisdiction over HDM's counterclaims for breach of contract and unjust enrichment.

In contrast, the Court finds that HDM's defamation claim arises out of a common nucleus of operative fact with the trademark infringement claims. "In Kansas, the elements of defamation are as follows: (1) false and defamatory words; (2) communication to a third person; and (3) harm to the reputation of the person defamed."[21] Here, HDM alleges, in part, that Counterclaim Defendants made statements referring to HDM's products as "bootleg copies." The determination of whether these are false or defamatory statements turns on whether HDM can lawfully use the "Big Dog" trademarks. If HDM can use the marks, then the allegedly defamatory statements would not be false. Thus, from an evidentiary standpoint, resolution of the defamation claim would involve at least some of the same evidence as the trademark infringement claim—the assignment documents from 2014, the license agreement, and use of the parties' marks in commerce.

Furthermore, allowing HDM's defamation counterclaim to proceed would serve the interests of judicial economy. As noted above, the claims require some of the same evidence, and some of the witnesses will most likely be the same. Accordingly, the Court will exercise supplemental jurisdiction over HDM's defamation claim.

---

[21] *Byers v. Snyder*, 44 Kan. App. 2d 380, 396, 237 P.3d 1258, 1270 (2010) (citation omitted).

**B.     HDM fails to state a claim for defamation.**

Counterclaim Defendants also seek dismissal of HDM's defamation claim under Rule 12(b)(1). First, they contend that HDM's defamation claim is actually a claim for product disparagement, which is not a recognized cause of action under Kansas law. Second, they contend that any defamation claim based upon a statement made by Nick Moore is barred by the statute of limitations. And, third, they contend that any remaining allegations are legally insufficient to state a defamation claim. The Court will address each of these arguments below.

   *1.     Product Disparagement*

Counterclaim Defendants argue that HDM's defamation claim is deficient because the alleged defamatory statements all relate to HDM's products and not HDM itself. Under Kansas law, a corporation can have a cause of action for defamation, but it cannot have a cause of action for product disparagement.[22] The distinction between the two torts is that product disparagement is aimed solely at a company's products while defamation concerns the company's character.[23]

Here, almost all of the alleged defamatory statements relate to HDM's products. For example, in paragraph 60, HDM alleges that "when selling products on their eBay storefront, [Counterclaim Defendants] claim that their products are authentic while HDM's are 'bootleg copies' or 'Chinese imported copies.' " HDM also alleges that Counterclaim Defendants are telling customers that HDM's products are inferior or unreliable. These allegations support a

---

[22] *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 442 F. Supp. 2d 1160, 1166 (D. Kan. 2006); *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1032, 1073 (D. Kan. 2006) (citing *St. Catherine Hosp. v. Rodriguez*, 25 Kan. App. 2d 763, 768, 971 P.2d 754, 757 (1988)); *Hartford Fire Ins. Co. v. Vita Craft Corp.*, 911 F. Supp. 2d 1164, 1179 n.12 (D. Kan. 2012) (same).

[23] *See Sunlight Saunas*, 442 F. Supp. 2d at 1167.

product disparagement claim, not a defamation claim. Therefore, HDM cannot rely on these allegations in support of its defamation claim.

However, HDM has also alleged that Nick Moore falsely claimed that HDM "screwed [its products] out of the original Big Dog" and that MNM "continue[s] to denigrate HDM and its products." These statements go beyond disparaging HDM's products and extend to the reputation of HDM itself. In *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, another judge in this district addressed a similar allegation which stated that the defendants provided "false or misleading information about the company and its products."[24] The court found that this allegation qualified as more than product disparagement and sufficiently stated a claim of defamation.[25] Accordingly, the Court concludes that it cannot dismiss the entirety of HDM's defamation claim on the basis that it is a product disparagement claim in disguise.

### 2. *Statute of Limitations*

In Kansas, the statute of limitations for a defamation claim is one year. A defamation claim accrues on "the date the allegedly defamatory statement is uttered or published." HDM alleges that Nick Moore made defamatory statements about the company in June 2017. The defamation counterclaim was not asserted in this action until November 21, 2018—more than one year later. Counterclaim Defendants therefore argue that any defamation claim based on Nick Moore's statements is time-barred.

In response, HDM argues that its defamation claim is ongoing. In support of this argument, it cites paragraph 60 of the First Amended Counterclaims, which states that "Counterclaim-

---

[24] *Id.*

[25] *Id.*

Defendants continue to denigrate HDM and its products." HDM, however, has not identified any Kansas law applying the continuing tort doctrine to defamation claims. Furthermore, Counterclaim Defendants do not seek to dismiss the entire claim on this basis—only the statements of Nick Moore made in June 2017. Accordingly, the Court dismisses HDM's defamation claim to the extent HDM relies on the June 2017 statements.

        3.      *The eBay listings do not refer to HDM.*

Even if the Court did not find that the eBay listings describe HDM's products and not its reputation, HDM cannot rely on these listings in support of its defamation claim. "To be defamatory, a statement must be of and concerning the plaintiff."[26] Nothing in the eBay listing identifies HDM as the seller of the "bootleg" or "Chinese imported" parts. In fact, nowhere in those listings is HDM even mentioned. HDM argues that this is irrelevant because the defamatory statement "need not refer to the plaintiff by name if it is reasonably understood as referring to him." According to HDM, customers would have reasonably understood that the listings were referring to it because HDM is the only other seller of those parts and accessories in the market.

The Court is not persuaded by this argument. HDM has not alleged anywhere in its First Amended Counterclaims that it was the only seller of the products in the eBay listings or that consumers would reasonably assume that Counterclaim Defendants were referring to it as the seller of the "bootleg" products. Furthermore, at Counterclaim Defendants' request, the Court takes judicial notice of the fact that there are millions of buyers and sellers on eBay, demonstrating the potential for multiple illegitimate sellers of these products in the marketplace.[27] Accordingly, the

---

[26] *Hale v. Emporia State Univ.*, 2016 WL 3277264, at *9 (D. Kan. 2016) (citing Restatement (Second) of Torts § 564 (1977)).

[27] The Court may take judicial notice of facts that are a matter of public record or are sufficiently reliably and readily available, such as information available on the internet. *See Marten Transport, LTD v. Platform Advertising,*

Court dismisses HDM's claims to the extent they rely on the eBay listings described in the First Amended Counterclaims.

*4. HDM's remaining defamation allegations are legally insufficient.*

The only remaining allegation in the First Amended Counterclaims that HDM may rely upon in support of its defamation claim is found in paragraph 60. That allegation states: "Counterclaim-Defendants continue to denigrate HDM and its products." This statement alone, however, is not sufficient to state a claim. As explained in *Fisher v. Lynch*,[28]

> [D]efamation claims present a "significant exception" to general liberal pleading standards because defamation constitutes a "traditionally disfavored" cause of action. To sufficiently plead a defamation claim, the complaint must allege the defamatory words, the communicator of those words, the persons to whom those words were published and the time and place of publication.[29]

HDM's allegation does not identify any specific defamatory words, the persons to whom the words were published, or the time and place of the publication. Therefore, the Court dismisses HDM's defamation claim in full.

**IT IS THEREFORE ORDERED** that Counterclaim Defendants' Motion for Partial Judgment on the Pleadings (Doc. 44) is **GRANTED**. The Court dismisses Count I (breach of contract), Count II (unjust enrichment), and Count IV (defamation) of the First Amended Counterclaims.

---

*Inc.*, 2016 WL 1718862, at *4 (D. Kan. 2016) (noting that the "Tenth Circuit has sanctioned taking judicial notice of factual information on the internet"). Notably, HDM did not respond to Counterclaim Defendants' request for the Court to take judicial notice of these facts in its opposition brief. *See Torgerson v. LCC, Int'l, Inc.*, 227 F. Supp. 3d 1224, 1229 (D. Kan. 2017) (finding failure to respond to argument constituted waiver of the issue).

[28] 531 F.Supp.2d 1253 (D. Kan. 2008).

[29] *Id.* at 1271.

**IT IS SO ORDERED**.

Dated this 30th day of July, 2019.

                                                ERIC F. MELGREN
                                                UNITED STATES DISTRICT JUDGE