IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MNM INVESTMENTS, LLC,

    *Plaintiff,*

vs.

HDM, INC. and DEREK MCCLOUD,

    *Defendants.*

Case No. 18-1267-EFM-KGG

HDM, INC.,

    *Counterclaim-Plaintiff*,

v.

MNM INVESTMENTS, LLC,
KANSAS MOTORCYCLE WORKS, LLC,
and MATTHEW MOORE,

    *Counterclaim-Defendants*.

**MEMORANDUM AND ORDER**

Plaintiff MNM Investments, LLC, and Counterclaim Defendants Kansas Motorcycle Works, LLC, and Matthew Moore (collectively, "MNM") move for partial summary judgment on the ownership of the federally registered trademarks "Big Dog Motorcycles" and "BDM" (the "Asserted Marks").[1] MNM alleges that it acquired the Asserted Marks from their original owners

---

[1] MNM also claims ownership of the "Big Dog Motorcycles" logo mark. There is a discrepancy between MNM's opening and reply briefs regarding whether MNM is seeking summary judgment on the ownership of the logo

and their lenders in a series of conveyances. Defendants HDM, Inc., and Derek McCloud (collectively, "HDM") dispute MNM's ownership of the Asserted Marks and assert that they have acquired superior title in them. For the reasons discussed below, the Court grants in part and denies in part MNM's motion.

## I. Factual and Procedural Background[2]

### A. The Asserted Marks and Their Alleged Chain of Title

The Asserted Marks were originally owned by Big Dog Motorcycles, LLC ("Old Big Dog")—a former dealer of high-end custom motorcycles. In April 2011, Intrust Bank, N.A. ("Intrust") foreclosed on its loans to Old Big Dog. Intrust possessed a security interest in Old Big Dog's physical and intangible assets, including the Asserted Marks. On April 5, 2011, Old Big Dog conveyed all of its property to Intrust so Intrust could dispose of and liquidate the assets as partial satisfaction of Old Big Dog's indebtedness. The next day, Intrust conveyed the registered trademark "BDM" and all associated goodwill to Motorcycle Enterprises, LLC. It also conveyed the registered trademark "Big Dog Motorcycles" and associated goodwill to Wichita Motorcycles, LLC.

More than two years later, on November 18, 2013, Intrust entered into an agreement with Matthew Moore—a former Old Big Dog employee and current principal of MNM—regarding the sale of Old Big Dog's assets held by Intrust. The Letter of Agreement signed by Moore and Intrust

---

mark. Because the parties did not address this mark in their arguments, the Court will not address it in this Memorandum and Order.

[2] In accordance with summary judgment procedures, the Court has set forth the uncontroverted facts, and they are related in the light most favorable to the non-moving party.

states that Moore was to act as liquidator of the foreclosed assets, and in exchange, Intrust would provide him "10% of the gross sales value of the assets" and the "Intellectual Property of [Wichita Motorcycles, LLC, Motorcycle Enterprises, and Big Dog Motorcycles, LLC]."

On October 2, 2014, Motorcycle Enterprises and Wichita Motorcycles executed a Quit Claim Bill of Sale (the "Quit Claim"). The Quit Claim states that Motorcycle Enterprises and Wichita Motorcycles "sell, transfer, and quit claim" to Intrust all of their right, title, and interest in the following property:

> All inventory, equipment, accounts (including but not limited to all healthcare insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of creditor, documents, deposit accounts, investment property, money, other rights to payment and performance, and ***general intangibles*** (including but not limited to all software and all payment intangibles); all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.[3]

It further states:

> Motorcycles Enterprises, LLC and Wichita Motorcycles, LLC further agree to deliver to INTRUST Bank, N.A. such other documents as the bank may reasonably request to document or complete the conveyance of any of the intangible or intangible property described above, including but not limited to: (i) trademarks, service marks, trade names, logos, and product names and the goodwill of the business associated therewith . . . .

---

[3] Quit Claim Bill of Sale, Doc. 68-8 (emphasis added).

The Quit Claim Bill does not specifically identify the Asserted Marks, their federal registration numbers, or any other trademarks owned by Wichita Motorcycles or Motorcycle Enterprises.

On November 13, 2014, Wichita Motorcycles and Intrust executed two identical conveyances titled "Assignment of Mark," except that one conveyance is for the "BDM" trademark and the other is for the "Big Dog Motorcycles" trademark. The "Assignment of Mark" documents contain two types of provisions. First, the documents state that Wichita Motorcycles "ratifies, confirms, and acknowledges the assignment" of the Asserted Marks to Intrust pursuant to the October 2014 Quit Claim. Second, the documents state that Intrust assigns all of its right, title, and interest in the Asserted Marks, together with the goodwill of the business, to MNM. The assignment provision states as follows:

> Assignor [Intrust] does hereby assign unto Assignee [MNM] all of its right, title and interest in and to the Mark, if any, and the registration therefore for the United States . . . together with the goodwill of the business in connection with which the Mark is used and which is symbolized by the Mark, along with the right to recover for damages and profits for past infringements thereof.

Less than a week later, on November 17, Intrust and MNM executed a "Quit Claim Assignment and Assumption of Intellectual Property" setting forth the terms and conditions of Intrust's assignment of certain assets and technology to MNM. Paragraph 2 of this document contains an "Assignment" provision stating that Intrust "does hereby quitclaim, assign, sell and transfer unto [MNM] WITHOUT RECOURSE all right, title, and interest in and to: . . . (iii) the Marks, [and] (iv) the goodwill of the Business symbolized by and associated with the Marks. . . ." The term "Marks" is defined as "all trademarks and service marks and the registrations and/or applications that are identified in the Quitclaim Bill of Sale identified as Exhibit A." The document in Exhibit A is the Quit Claim.

-4-

On November 20, an Intrust representative sent an email to Kathy Human, the manager of Wichita Motorcycles and Motorcycles Enterprises, stating that the parties had executed the wrong "Assignment of Mark" document for the "BDM" mark. The correct "Assignment of Mark" document lists Motorcycle Enterprises as the entity who assigned the mark to Intrust, and not Wichita Motorcycles. Motorcycle Enterprises executed a corrected Assignment of Mark for the "BDM" mark on November 24, and Intrust executed the same document on December 1.

Motorcycle Enterprises and Wichita Motorcycles were dissolved in June 2015.

**B.      HDM's Use of the Asserted Marks**

HDM began selling parts and accessories bearing the Asserted Marks in 2003. From 2003 to 2012, HDM purchased parts and accessories for resale from Old Big Dog. As early as 2011, it began ordering and selling newly manufactured parts and accessories, some of which bore the Asserted Marks, with full knowledge of and without objection of Old Big Dog. HDM continued to sell Big Dog motorcycle parts through its eBay storefront through 2018.

From 2015 through 2018, HDM worked with Moore regarding selling parts and accessories bearing the Asserted Marks. After the liquidation of Old Big Dog in 2014, Moore represented that he owned the Asserted Marks because of the assignments executed between Motorcycle Enterprises, Wichita Motorcycles, Intrust, and MNM. Moore and MNM had full knowledge of, and did not object to, HDM's sale of parts and accessories bearing the Asserted Marks from 2015 through 2018. In addition, during this time period, HDM protected the Big Dog brand from unauthorized counterfeiters by pursuing them through the brand enforcement channels of various online retailers with MNM's knowledge and approval.

## C. This Litigation

In 2017, the parties' relationship crumbled. MNM filed suit in September 2018 asserting claims of trademark infringement, trademark counterfeiting, and breach of contract. In response, HDM asserts that MNM is not the owner of the Asserted Marks due to gaps or missing conveyances that should have been executed but never were. HDM also asserts that it has acquired superior rights in the Asserted Marks due to HDM's use of them in commerce from 2003 to 2018. MNM now moves for partial summary judgment on the issue of ownership of the Asserted Marks.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[4] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[5] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[6] If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[7] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone

---

[4] Fed. R. Civ. P. 56(a).

[5] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[6] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986)).

[7] *Id*. (citing Fed. R. Civ. P. 56(e)).

cannot survive a motion for summary judgment.[8] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[9]

### III. Analysis

MNM seeks summary judgment on the ownership of the Asserted Marks based on the series of conveyances granting title in the marks to it. In response, HDM argues that summary judgment is not appropriate because the conveyances do not show that MNM owns the Asserted Marks as a matter of law and because there are genuine issues of material fact regarding loss of rights to the Asserted Marks and HDM's intervening rights in the marks by using them in commerce. The Court will first address the parties' arguments regarding the assignment of the Asserted Marks to MNM.

**A.     Assignment of the Asserted Marks**

MNM contends that the conveyances at issue unambiguously transfer title in the Asserted Marks to it: Old Big Dog conveyed the Asserted Marks to Intrust on April 5, 2011. The next day, Intrust conveyed the "BDM" trademark to Motorcycle Enterprises and the "Big Dog Motorcycles" trademark to Wichita Motorcycles. Those two entities conveyed the Asserted Marks back to Intrust in October 2014 through the Quit Claim. Intrust subsequently conveyed the Asserted Marks to MNM through the "Assignment of Mark" documents and the "Quitclaim Assignment and Assumption of Intellectual Property" document in November 2014.

HDM argues that the October 2014 Quit Claim was ineffective to transfer any trademark rights from Wichita Motorcycles and Motorcycle Enterprises to Intrust. HDM further argues that

---

[8] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

[9] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

as a result, title in the Asserted Marks was still held by Wichita Motorcycles and Motorcycle Enterprises as of November 2014. According to HDM, when those entities dissolved, it resulted in abandonment of the Asserted Marks, which HDM then acquired by its own use.

The Court will interpret the Quit Claim pursuant to Kansas law.[10] Under Kansas law, construction of a written contract is a matter of law for the Court.[11] When a contract is unambiguous, "the Court's function is to enforce the contract as made."[12] "In construing a contract, the intent of the parties is the primary question; meaning should be ascertained by examining the documents from all corners and by considering all of the pertinent provisions, rather than by critical analysis of a single or isolated provision; and reasonable rather than unreasonable interpretations are favored."[13] When the contract is complete and unambiguous on its face, the Court must determine the parties' intent from the contract itself and not from extrinsic or parol evidence.[14]

HDM argues that the Quit Claim does not transfer title in the Asserted Marks to Intrust because although it lists the transferred property in detail, it does not refer to intellectual property, trademarks, or the specific trademarks at issue here. HDM further argues that the Quit Claim

---

[10] A federal court exercising supplemental jurisdiction over state law claims in a federal question lawsuit applies the substantive law, including the choice of law rules, of the forum state. *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1104 (10th Cir. 1999). Under Kansas law, the interpretation of a contract is governed by the law of the place where the contract was made. *Deere & Co. v. Loy*, 872 F. Supp. 867, 870 (D. Kan. 1994) (citing *Simms v. Metropolitan Life Ins. Co.*, 9 Kan. App. 2d 640, 642, 685 P.2d 321, 324 (1984)). The parties have not informed the Court where the Quit Claim was made, but they agree that the Kansas law governs the document.

[11] *Wagnon v. Slawson Exploration Co., Inc.*, 255 Kan. 500, 511, 874 P.2d 659, 666 (1992) (citation omitted).

[12] *D.R. Lauck Oil Co., Inc. v. Breitenbach*, 20 Kan. App. 2d 877, 878-79, 893 P.2d 286, 288 (1995) (citation omitted).

[13] *Lauck*, 893 P.2d at 287.

[14] *Simon v. Nat'l Farmers Org.*, 250 Kan. 676, 679–80, 829 P.2d 884, 888 (1992) (citation omitted).

contains a further assurances clause that by its plain meaning states that the conveyance of intellectual property would be completed through other documents. The Court disagrees.

The plain language of the Quit Claim unambiguously conveys the Asserted Marks to Intrust. The Quit Claim lists "general intangibles" in the list of property being conveyed to Intrust. Because this term is not defined in the Quit Claim, it must be given its ordinary meaning, which includes trademarks and other intellectual property.[15] Indeed, when courts have analyzed this term in the context of security agreements, they have universally concluded that trademarks fall within the term "general intangibles." As the bankruptcy court in *In re Topsy's Shoppes, Inc. of Kansas* recognized: "[E]very case addressing the same or similar issues has concluded that such items [e.g., "franchise agreements, trademarks, and copyrights"] are normally encompassed within the term 'general intangibles.' "[16]

Furthermore, the further assurances clause confirms that the term "general intangibles" includes trademarks. The further assurances clause states:

> Motorcycle Enterprises, LLC and Wichita Motorcycles, LLC further agree to deliver to INTRUST Bank, N.A. such other documents as the bank may reasonably request to document or complete the conveyance any [sic] of the tangible or intangible property described above, including, but not limited to: (i) trademarks, service marks, trade names, logos, and product names and the goodwill of the business associated therewith[.]

The clause includes "trademarks" and "the goodwill of the business associated therewith" as part of the "intangible property" described in the granting clause of the Quit Claim. Thus, when reading

---

[15] *See e.g., Kansas Penn Gaming, LLC v. HV Properties of Kan., LLC*, 662 F.3d 1275, 1287 (10th Cir. 2011) ("The phrase 'reasonably acceptable' is not defined in the Sale Contract. Consequently, it must be accorded its 'ordinary meaning.' "); *Shutts v. Phillips Petroleum Co.*, 222 Kan. 527, 562, 567 P.2d 1292 (1977) ("While the term 'received' is not defined in the contract, giving the term its ordinary meaning . . .").

[16] 131 B.R. 886, 888-89 (D. Kan. 1991) (citing *In re Lady Madonna Indus., Inc.*, 99 B.R. 536, 539 (S.D.N.Y. 1989); *In re Emergency Beacon Corp.*, 23 U.C.C. Rep. Serv. 766 (Bankr. S.D.N.Y. 1977); *In re Portest of Strayer*, 239 Kan. 136, 142, 716 P.2d 588, 593 (1986)).

the further assurances clause in conjunction with the granting clause, the Court must conclude that the parties intended for the Asserted Marks be assigned to Intrust.

The Court also is not persuaded by HDM's argument that the further assurances clause plainly states that the conveyance of intellectual property would be completed through other documents. The further assurances clause requires Wichita Motorcycles and Motorcycles Enterprises to deliver documents to Intrust "to document . . . the conveyance" of the trademarks. The Court construes this to mean that the assignment occurred through the granting provision of the Quit Claim and that any further documentation of this assignment would occur later. HDM's argument would require the Court to read the further assurances clause in a vacuum, which it is not allowed to do. When the granting provision and the further assurances clause are read together, the Quit Claim effectively transfers title in the Asserted Marks from Wichita Motorcycles and Motorcycle Enterprises to Intrust.

Even if the Quit Claim could reasonably be construed as not conveying trademarks to Intrust, HDM has not shown that this issue would ultimately been resolved in its favor. "An instrument is ambiguous when the application of pertinent rules to the whole fails to make certain which one of two or more meanings is conveyed by the words employed by the parties."[17] If a court finds a contract ambiguous, then "facts and circumstances existing prior to and contemporaneously with its execution are competent to clarify the intent and purpose of the

---

[17] *Central Nat'l Res., Inc. v. Davis Operating Co.*, 288 Kan. 234, 245, 201 P.3d 680 (2009) (internal quotations and citation omitted).

contract."[18] The court also looks to the parties' conduct after executing the contract as relevant to their intent.[19]

Relevant in this case is Wichita Motorcycles' and Motorcycle Enterprises' ratification of the assignment to Intrust. Shortly after the execution of the Quit Claim, both entities executed "Assignment of Mark" documents ratifying and confirming the transfer of all their rights in the "Big Dog Motorcycles" and "BDM" marks pursuant to the Quit Claim. "Ratification has been defined as the acceptance of the result of an act with an intent to ratify, and with full knowledge of all the material circumstances." Thus, any question as to the parties' intent in executing the Quit Claim is answered by these subsequent agreements.

Other than the October 2014 Quit Claim, HDM does not challenge the sufficiency of the assignment documents conveying title in the Asserted Marks to MNM. The Court therefore concludes that the conveyances described in this Order transferred title in the Asserted Marks to MNM.

**B.   Wichita Motorcycles' and Motorcycle Enterprises' Alleged Abandonment of the Marks**

HDM argues that there is a genuine issue of fact regarding whether Wichita Motorcycles and Motorcycle Enterprises abandoned the Asserted Marks before they assigned them back to Intrust, thereby rendering the subsequent conveyances from Intrust to MNM invalid. Under the Lanham Act, trademarks may be abandoned when use is discontinued, and nonuse for three or more consecutive years is prima facie evidence of abandonment.[20] According to HDM, MNM has

---

[18] *Id.* (internal quotations and citation omitted).

[19] *Id.*

[20] 15 U.S.C. § 1127.

not provided any evidence of use of the Asserted Marks from the time Wichita Motorcycles and Motorcycle Enterprises acquired them in 2011 until the time they assigned them to Intrust in 2014.

In response, MNM argues that HDM is precluded from making this argument because it contradicts their contentions in the First Amended Counterclaims. In paragraphs 22 and 30 of the First Amended Counterclaims, HDM alleges:

> 22. Around the same time, Matthew Moore began trying to acquire the trademarks associated with Old Big Dog's business. In early 2014, Wichita Motorcycles, LLC, one of Sheldon Coleman's entities, owned the rights to a number of federally registered trademarks, including Big Dog Motorcycles (Reg. No. 3203461) and other cancelled marks not asserted in this case . . . Motorcycle Enterprises, LLC, owned the rights to the federal registered trademarks BDM (Reg Nos. 32331705 and 3363062) during the same time period.
>
> 30. Accordingly, as of November 16, 2014, the two federally registered trademarks for the Big Dog Motorcycle [sic] and BDM trademarks, any common law trademarks and any goodwill associated with Old Big Dog, were being held by Wichita Motorcycles, LLC and Motorcycle Enterprises, LLC. Both Wichita Motorcycles, LLC and Motorcycle Enterprises, LLC were voluntarily dissolved on June 3, 2015, without ever transferring their trademark rights and goodwill to another entity.

MNM points out that HDM's position since filing its Answer has been that Motorcycle Enterprises and Wichita Motorcycles owned the marks up until their dissolution in June 2015 and that HDM acquired the Asserted Marks, not because these entities abandoned them between 2011 and 2014, but because the conveyances were ineffective. According to MNM, HDM cannot reverse this position simply because it is convenient to do so in response to MNM's motion.

"Judicial admissions are formal, deliberate declarations which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about

which there is no real dispute."[21]  "A judicial admission is conclusive, unless the court allows it to be withdrawn . . . ."[22]  When the party making a judicial admission "explains the error in a subsequent pleading or by amendment, the trial court must accord the explanation due weight."[23]

"A statement or assertion of fact in a complaint or other pleading may serve as a judicial admission."[24]  Here, HDM explicitly plead that as of 2014, Wichita Motorcycles and Motorcycle Enterprises owned the rights and associated goodwill to the Asserted Marks.  In no subsequent pleading or amendment has HDM asserted that these entities abandoned the Asserted Marks.  Accordingly, the allegations in paragraphs 22 and 30 of the First Amended Counterclaims are binding on HDM.  HDM has not presented a genuine issue of fact regarding Wichita Motorcycles' and Motorcycle Enterprises' abandonment of the Asserted Marks from 2011 to 2014.

## C.  Uncontrolled Licensing

HDM next asserts that even if MNM obtained ownership of the Asserted Marks, there is a genuine issue of material fact as to whether a license existed between the parties, and what the terms of the license were.  Assuming there was an implied license, HDM claims that MNM did not exercise control over the products made and sold by it featuring the Asserted Marks.  HDM

---

[21] *Smith v. Argent Mortg. Co*., 331 F. App'x 549, 556 (10th Cir. 2009) (quoting *U.S. Energy Corp. v. Nukem, Inc*., 400 F.3d 822, 833 n.4 (10th Cir. 2005)).

[22] *Koch v. Koch Indus., Inc*., 996 F. Supp. 1273, 1277 (D. Kan. 1998) (quoting *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995)).

[23] *Smith*, 331 F. App'x at 556 (quoting *Sicor Ltd. v. Cetus Corp*., 51 F.3d 848, 859-60 (9th Cir. 1995)).

[24] *Koch*, 996 F. Supp. 2d at 1277 (citing *Sicor*, 51 F.3d at 859); *see also Spencer v. City of Boston*, 2015 WL 6870044, at *3 (D. Mass. 2015) ("Clear and unambiguous allegations in a complaint may be treated as admissions by a party for purposes of summary judgment."); *Am. Title Ins. Co. v. Lacelaw Corp*., 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.").

therefore argues that there is a genuine issue of material fact regarding whether MNM lost rights to the Asserted Marks through uncontrolled licensing.

Under the Lanham Act, a mark may be abandoned when "acts or omissions" of its owner cause the mark to "lose its significance."[25] One of these acts or omissions is known as "uncontrolled" or "naked" licensing.[26]

> Naked (or uncontrolled) licensing of a mark occurs when a licensor allows a licensee to use the mark on any quality or type of good the licensee chooses. When a trademark owner engages in naked licensing, without any control over the quality of goods produced by the licensee, such practice is inherently deceptive and constitutes abandonment of any rights to the trademark by the licensor. Thus, the licensor must take some reasonable steps to prevent misuses of his trademark in the hands of others. The critical question . . . is whether the plaintiff sufficiently policed and inspected its licensee['s] operations to guarantee the quality of the products [the licensee sold].[27]

MNM, however, contends that licensee estoppel bars HDM from claiming abandonment due to naked licensing. Under the doctrine of licensee estoppel, "[t]he licensee is estopped from claiming any rights against the licensor which are inconsistent with the terms of the license."[28] This is true even if the implied license alleged to exist is a naked license.[29] The licensee may,

---

[25] 15 U.S.C. § 1127.

[26] *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 548 (10th Cir. 2000).

[27] *Stanfield v. Osborne Indus., Inc*., 52 F.3d 867, 871 (10th Cir. 1995).

[28] *Creative Gifts,* 235 F.3d at 548-49 (quoting J. Thomas McCarthy, *Trademarks & Unfair Competition* § 18:63 (4th ed. 2000)).

[29] *See id*. at 548 (concluding that the implied licensee's status precluded them from asserting the naked licensing argument based on conduct occurring during the term of the license).

however, "challenge the licensor's title to the mark based on events which occurred *after* the license expired."[30] This rule applies to both implied and express license agreements.[31]

In his declaration, McCloud (HDM's principal) states that MNM was aware of HDM's sale of parts and accessories bearing the Asserted Marks from 2014 through 2018. He also states that from 2015 to 2018 MNM failed to exercise quality control over HDM's use of the Asserted Marks. These statements create a genuine issue of material fact regarding whether there was an implied license between MNM and HDM to use the Asserted Marks. But they do not create a genuine issue of material fact regarding whether MNM lost rights to the Asserted Marks through uncontrolled licensing. HDM's argument presumes that there is an implied license between the parties. If such license exists, HDM is estopped from relying on conduct during the term of that license to challenge the ownership of the Asserted Marks.

The Court's resolution of this issue is premature at this stage in the litigation. As noted above, HDM's uncontrolled licensing defense presumes the existence of a license agreement between the parties, and this issue is not currently before the Court. Should the parties later raise the licensing issue, HDM may assert that MNM engaged in uncontrolled licensing. But, HDM is estopped from relying on any conduct that occurred during the term of the alleged license in support of this defense.[32]

---

[30] *Id*. at 548 (citation omitted).

[31] J. Thomas McCarthy, *Trademarks & Unfair Competition* § 18:63 (4th ed. 2000).

[32] The parties have not offered any evidence regarding the terms or length of an alleged licensing arrangement between MNM and HDM. Although HDM offers the declaration of McCloud to show that MNM did not exercise control over the products made and sold by HDM, it's not clear when this alleged lack of control continued after any alleged license expired.

**D.     HDM's Rights to the Asserted Marks through Use in Commerce**

Finally, HDM argues that there are factual issues pertaining to "intervening and superior rights" it obtained because of its use of the Asserted Marks between 2003 and 2014. HDM argues that there are genuine issues of material fact as to whether Wichita Motorcycles, Motorcycle Enterprises, and MNM lost rights to the Asserted Marks through nonuse, invalid assignments, and/or uncontrolled licensing. HDM has sold products bearing the Asserted Marks since 2003. HDM therefore argues that because use in commerce is a touchstone of trademark rights, there is a genuine issue of material fact regarding whether it obtained superior rights to the Asserted Marks.

The Court rejects HDM's argument to the extent it relies on Wichita Motorcycles' and Motorcycle Enterprises' alleged abandonment of the Asserted Marks from 2011 to 2014 and the alleged invalid assignment of the Asserted Marks to MNM. The Court has already disposed of these arguments as discussed above. To the extent HDM relies on an uncontrolled license defense, there are genuine issues of material fact regarding whether HDM has superior rights in the Marks because of its use of them in commerce. The Court will address this argument if and when the parties raise the uncontrolled licensing defense in the future.

## IV.     Conclusion

The Court grants MNM's motion to establish ownership of the Asserted Marks against the claims of HDM that (1) the 2014 conveyances do not convey titled to MNM; (2) Wichita Motorcycles and Motorcycle Enterprises abandoned their rights to the Asserted Marks from 2011 to 2014; and (3) conduct during an alleged license agreement with MNM constituted naked

licensing.  Other than as stated above, the Court denies MNM's motion establishing ownership of the Asserted Marks.[33]

**IT IS THEREFORE ORDERED** that Plaintiff's and Counterclaim Defendants' Motion for Partial Summary Judgment (Doc. 61) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED**.

Dated this 13th day of August, 2019.

*[signature]*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[33] Under Fed. R. Civ. P. 56(d), if the Court does not grant all of the movant's requested relief, it may "enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case."