# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MNM INVESTMENTS, LLC,

*Plaintiff*,

vs.

HDM, INC. and DEREK MCCLOUD,

*Defendants.*

Case No. 18-1267-EFM-KGG

HDM, INC.,

*Counterclaim-Plaintiff*,

v.

MNM INVESTMENTS, LLC,
KANSAS MOTORCYCLE WORKS, LLC,
and MATTHEW MOORE,

*Counterclaim-Defendants*.

**MEMORANDUM AND ORDER**

Plaintiff MNM Investments, LLC, brought this suit against a former parts supplier and its principal, Defendants HDM, Inc., and Derek McCloud. MNM alleges that is the owner of three federally registered trademarks—the word mark "BDM," the word mark "Big Dog Motorcycles," and the logo mark "Big Dog Motorcycles"—as well as other intellectual property pertaining to the design and manufacture of high-end motorcycles. MNM asserts claims of trademark infringement and counterfeiting under the Lanham Act and a claim for breach of contract under Kansas law.

This matter comes before the Court on MNM's Motion for Preliminary Injunction (Doc. 75). As explained in more detail below, the Court grants MNM's motion with respect to HDM's and McCloud's use of the entity name "Big Dog Motorcycles, LLC." The Court otherwise denies MNM's request for preliminary injunctive relief.

## I. Factual and Procedural Background

Between 1994 and 2011, Big Dog Motorcycles, LLC, ("Old Big Dog") manufactured and sold specialty motorcycles under the "Big Dog" brand. Old Big Dog is the original owner of the "Big Dog Motorcycles" and "BDM" federal trademark registrations (the "Asserted Marks"). In 2003, HDM began purchasing parts and accessories from Old Big Dog for resale on its eBay storefront. Some of the parts and accessories that HDM sold bore the Asserted Marks. HDM eventually began ordering new Big Dog parts for resale, some of which also bore the Asserted Marks.

In 2011, Old Big Dog entered bankruptcy. Its chief lender, Intrust Bank, N.A., foreclosed on more than $2 million in loans and looked to its collateral for satisfaction. Old Big Dog's director of marketing and sales at the time was Matthew Moore, who is also one of MNM's principals. Moore wanted to see the Big Dog line of motorcycles survive, so he made an agreement with Intrust to find a buyer for Old Big Dog's assets. In return, Intrust agreed to assign him Old Big Dog's intellectual property and 10% of the proceeds from the foreclosure process. Moore spent the next two years overseeing the liquidation. Intrust, for its part, executed a series of conveyances that assigned the Asserted Marks to MNM.

In 2014, HDM purchased Old Big Dog's inventory, equipment, computers, and tooling from Intrust. From 2014 to 2018, HDM continued to sell Big Dog motorcycle parts and

accessories, some of which bore the Asserted Marks and the "Big Dog Motorcyles" logo mark.[1] These parts and accessories were either purchased in liquidation from Old Big Dog, or newly manufactured for HDM, with MNM's knowledge and acquiescence. In fact, MNM coordinated with HDM: HDM advanced its parts to MNM's affiliate Kansas Motorcycle Works, USA, LLC for use in new motorcycles, and HDM allowed Kansas Motorcycle Works to sell parts through its website. HDM also defended the Big Dog brand by policing unauthorized use of the Asserted Marks on the website of other retailers.

MNM and HDM worked together from 2014 to 2017. MNM alleges that the parties' relationship during this time was governed by a written license agreement. Under this agreement, MNM granted HDM a license to use certain Big Dog intellectual property in connection with the manufacture and sale of goods. The license agreement allegedly governed HDM's use of MNM's trademarks, which the agreement defines as "all copyrights, trade marks [sic], trade names, service marks, trade dress, logos, insignias and product names" that are owned by MNM. This definition encompasses the Asserted Marks as well as Big Dog product names like K-9, K-9 250, Coyote and others. The license also allegedly governed HDM's use of MNM's "Design Information," which is defined as "all information . . . about design and engineering specifications, directions, processes and procedures . . . that is used or useful in connection with the assembly, manufacturer [sic] or service of the Motorcycles or any parts incorporated therein."

MNM has not produced a signed copy of the license agreement. HDM's principal, Derek McCloud, testified at the hearing that this is because he never read, negotiated, or signed this

---

[1] MNM filed an application to register the "Big Dog Motorcycles" logo mark on November 2, 2015. This mark was ultimately registered under number 5,357,471 for use in connection with motorcycles. Throughout the remainder of this Order, the term "Asserted Marks" will include the "Big Dog Motorcycles" logo mark, the "BDM" word mark, and the "Big Dog Motorcycles" word mark.

agreement. McCloud admits that the agreement was sent to Cover Craft—a parts supplier—in December 2014 as evidence of HDM's right to use the "Big Dog Motorcycles" mark but testified that he never reviewed the agreement at that time or otherwise assented to its terms.

In December 2017, Moore and McCloud began negotiating MNM's purchase of HDM. The negotiations were not fruitful. In June 2018, MNM sent McCloud an email telling him that HDM's right to use MNM's intellectual property expired in December 2017. MNM alleges that despite this notification, HDM continues to sell and order for manufacture Big Dog branded parts and accessories in violation of the license agreement.

MNM filed suit against HDM on September 27, 2018, asserting claims of (1) federal trademark infringement, (2) common law trademark infringement, (3) trademark counterfeiting, and (4) breach of contract. MNM alleges that HDM's continued use of the Asserted Marks and its product names in connection with the manufacture and sale of its motorcycle parts constitutes infringement. It further alleges that HDM breached the license agreement between the parties by continuing to use the Design Information to manufacture motorcycle parts after termination of the license agreement and by underpaying royalties due to MNM on parts sold by HDM. HDM denies these allegations and disputes MNM's ownership of the Asserted Marks. It contends that MNM never acquired ownership of the "BDM" and "Big Dog Motorcycles" marks from Intrust, that it fraudulently acquired a federal registration for the "Big Dog Motorcycles" logo mark, and that HDM actually acquired common law ownership of the marks through its continuous use of them in commerce from 2003 to 2018.

On May 13, 2019, MNM filed a motion for partial summary judgment on the ownership issue of the "BDM" and "Big Dog Motorcycles" word marks. On August 13, 2019, the Court ruled in MNM's favor, essentially finding that MNM owned the marks. The Court concluded, in

part, that the conveyances from Intrust to MNM in 2014 effectively conveyed the marks to MNM. It also rejected certain defenses brought by HDM as to MNM's abandonment and naked licensing of the marks.

While its summary judgment motion was pending, MNM filed a Motion for Preliminary Injunction. MNM asks the Court to enjoin HDM, McCloud, and their officers, agents, servants, employees, successors, and assigns, from:

> 1. Infringing, unfairly competing with, counterfeiting, and/or passing off the Big Dog trademarks, namely, the federally registered marks at issue in this lawsuit, as their own;
>
> 2. Using the Big Dog designation, or any colorable imitation;
>
> 3. Holding themselves or their products out to the public as "officially licensed," or of similar status with respect to the Big Dog marks;
>
> 4. Using the Big Dog Design Information or manufacturing, selling, or offering for sale goods derived from Big Dog Design Information.

The Court held a hearing on MNM's motion on August 19, 2019. During the hearing, MNM clarified that it is not seeking an injunction prohibiting HDM and McCloud from selling any parts bearing the Asserted Marks or manufactured using the Design Information that were acquired or manufactured during what it alleges was the term of the license. It is, however, seeking to enjoin HDM and McCloud from selling any parts bearing the Asserted Marks or manufactured using the Design Information that were acquired or manufactured after the expiration of the alleged license.

## II. Legal Standard

"As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."[2] The purpose of a preliminary injunction is "to preserve the status quo pending the outcome of the case."[3] Whether to grant or deny a preliminary injunction rest within the discretion of the district court.[4]

To be entitled to a preliminary injunction, the moving party must demonstrate: (1) that the movant will suffer irreparable injury unless the injunction issues; (2) that the threatened injury to the movant outweighs whatever damages the proposed injunction may cause the opposing parties; (3) that the injunction, if issued, would not be adverse to the public interest; and (4) that there is a substantial likelihood that the movant will eventually prevail on the merits.[5]

## III. Analysis

MNM's request for injunctive relief involves two components—the Asserted Marks and the Design Information. As noted above, MNM's first three requests seek to enjoin HDM and McCloud from making certain use of the Asserted Marks. The Court will address these requests first and then turn to MNM's request to enjoin HDM and McCloud from using the Design Information.

---

[2] *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (quoting *SCFC ILC, Inc. v. Visa USA Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991)).

[3] *Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir. 1986).

[4] *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009).

[5] *Schrier*, 427 F.3d at 1258; *see also Resolution Trust Corp. v. Cruce*, 783 F. Supp. 1309, 1310–11 (D. Kan. 1992).

Initially, it should be noted that MNM's request for preliminary injunctive relief is highly disfavored in this case because it seeks to alter the status quo.[6] The "status quo is the last uncontested status between the parties which preceded the controversy until the outcome of the final hearing."[7] Or, in other words, it is "the last peaceable uncontested status existing between the parties before the dispute developed."[8] A motion for preliminary injunction that seeks to alter the status quo must be more closely scrutinized "to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."[9]

Here, the last uncontested status of the parties allowed HDM to sell and order for sale parts and merchandise bearing the Asserted Marks or manufactured using the Design Information. HDM has been selling Big Dog branded parts and merchandise since at least 2003, and it has been ordering newly manufactured parts for Big Dog motorcycles since 2011. Because MNM's motion seeks to prevent HDM from performing these activities, it seeks to alter the status quo. Therefore, the Court will closely scrutinize MNM's request for injunctive relief.

**A.      MNM's Request for Preliminary Injunctive Relief as to the Asserted Marks**

MNM's first request for injunctive relief asks the Court to enjoin HDM and McCloud from infringing, unfairly competing with, counterfeiting, and passing off the Asserted Marks as their own. MNM has not offered any evidence that HDM or McCloud is currently selling products acquired after the term of the alleged license that bear the Asserted Marks. Additionally, MNM

---

[6] *See Schrier*, 427 F.3d at 1259 (identifying preliminary injunctions that alter the status quo as "disfavored").

[7] *Id*. at 1260 (quoting *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001)).

[8] *Id*. (quoting 11A Charles A. Wright et al., *Federal Practice and Procedure* § 2948 (2d ed. 1995)).

[9] *Id*. at 1259 (quoting *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004)).

has not offered any evidence that HDM or McCloud asserts ownership over the Asserted Marks or passes them off as their own. Indeed, when the Court pressed MNM's counsel over these matters during the preliminary injunction hearing, MNM agreed to drop its first request for preliminary injunctive relief. Therefore, the Court denies MNM's first request for an injunction.

The Court will next skip to MNM's third request for preliminary injunctive relief. This request asks the Court to enjoin HDM and McCloud from holding themselves or their products out to the public as "officially licensed" by the Big Dog brand. Again, MNM has not introduced any evidence that HDM or McCloud hold themselves out as Big Dog licensees. When the Court asked MNM's counsel at the hearing if this evidence had been introduced, he agreed with the Court that it had not. Therefore, the Court denies MNM's third request for injunctive relief.

MNM's second request concerning the Asserted Marks asks the Court to enjoin HDM and McCloud from using the Big Dog designation or any colorable imitation. During the hearing, McCloud testified that he registered the entity name "Big Dog Motorcycles, LLC" with the Kansas Secretary of State in December 2018—two months after this suit was filed. He further testified, however, that he had not taken any action with respect to the name and that he did not intend to do so in the future.

The Court concludes that any use of this entity name by McCloud or HDM in connection with HDM's business would constitute infringement of the "Big Dog Motorcycles" word mark.[10] HDM would essentially be claiming MNM's registered mark as its own. In addition, MNM would

---

[10] Under 15 U.S.C. § 1125(a), the owner of a registered trademark may bring an infringement action against any person who "uses in commerce any word, term, name, or false designation of origin. . . which is likely to cause confusion . . . as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person."

suffer irreparable harm if HDM is not enjoined from using this designation.[11] The threatened injury to MNM outweighs the harm an injunction to HDM or McCloud imposes. Indeed, McCloud stated that he has never used the name and will not in the future. And, the injunction is not adverse to the public interest.[12] Therefore, the Court enjoins HDM and McCloud from using the Big Dog Motorcycles, LLC, entity name.

**B.      MNM's Request for Preliminary Injunctive Relief as to the Design Information**

MNM's fourth request asks the Court to enjoin HDM and McCloud from using the Design Information or manufacturing, selling, or offering for sale parts derived from the Design Information. The Court cannot grant MNM's request, however, because MNM has not shown that it will suffer irreparable harm in the absence of injunctive relief.

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered . . . ."[13] A plaintiff seeking preliminary relief must "demonstrate that irreparable injury is *likely* in the absence of an injunction."[14] "To show a threat of irreparable harm, a plaintiff must demonstrate 'a significant risk that he or she will experience

---

[11] *See Heartland Animal Clinic, P.A. v. Heartland SPCA Animal Med. Clinic, LLC*, 861 F. Supp. 2d 1293, 1306 (D. Kan. 2012) ("[I]nfringement of a trademark by its nature contributes to irreparable injury to its owner.").

[12] *See Universal Engraving v. Duarte*, 519 F. Supp. 2d 1140, 1150 (D. Kan. 2007) ("[T]he public interest is served where unfair competition is restrained.").

[13] *Adidas Am., Inc. v. Nat'l Collegiate Athletic Ass'n*, 40 F. Supp. 2d 1275, 1281 (D. Kan. 1999) (quoting 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed. 1995)).

[14] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citations omitted).

harm that cannot be compensated after the fact by money damages.' "[15] Purely speculative harm is not sufficient to obtain injunctive relief.[16]

MNM relies primarily on the language of the alleged license agreement to show that it will suffer irreparable harm if HDM is not enjoined from using the Design Information. That agreement contains a provision stating that the licensee's failure to cease all use of the Design Information after termination or expiration of the agreement "will result in immediate and irreparable damage to the Licensor." MNM, however, has not presented a license agreement signed by both parties or any other proof that HDM approved the agreement. Furthermore, based on the limited evidence presented at the hearing, the Court cannot conclude that there is a substantial likelihood that MNM will prevail on its claim that HDM agreed to the license's terms through its conduct.

MNM also briefly argues that it will suffer irreparable harm because HDM recently placed a large order for wheels that are manufactured by a third party using the Design Information. But MNM has not pointed to conclusive evidence that the manufacturer of these wheels is using the Design Information. And even if it had, McCloud testified during the hearing that the manufacturer obtained the right to use the Design Information from Old Big Dog itself. Thus, any irreparable harm that MNM may have suffered from the sale of these wheels is purely speculative at this point.

---

[15] *Fish v. Kobach*, 840 F.3d 710, 751 (10th Cir. 2016) (quoting *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009)).

[16] *RoDa Drilling*, 552 F.3d at 1210 (citing *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003)).

Moreover, as MNM pointed out during the hearing, as part of its breach of contract claim, MNM is seeking an accounting under the license agreement of all parts sold by HDM using the Design Information. Should a jury find that the license agreement governs the parties' conduct, then MNM would be entitled to a royalty on these parts as calculated pursuant to the accounting. MNM therefore has an alternate remedy in the form of money damages if it prevails on its breach of contract claim and thus cannot show irreparable harm.

Finally, the Court also finds that MNM's delay in bringing this motion undercuts its claim that HDM's continued use of the Design Information will cause immediate and irreparable harm.[17] MNM's breach of contract claim allegedly accrued in December 2017—at the time the alleged license agreement expired. MNM did not sue HDM and McCloud until September 2018, and then instead of moving immediately for preliminary injunctive relief, MNM waited 10 more months to file this motion. MNM claims that it's bringing the motion now because "the prospect of dry, summer weather . . . drives customers out of hibernation in the spring," and motorcycle sales reach their peak in the summer. But MNM has no evidence to support this theory and this excuse would only have been persuasive if MNM would have filed its motion in the spring or early summer—not the end of July. MNM also claims that HDM's assertion of ownership over the Asserted Marks caused its delay, but HDM asserted this defense and its counterclaims in November 2018, eight months prior to filing this motion. Any complication caused by HDM's counterclaims should not have affected MNM's decision on whether to file a motion for preliminary injunction.

---

[17] *See Kan. Health Care Assoc. v. Kan. Dept. of Soc. and Rehab. Servs.*, 31 F.3d 1536, 1543-44 (10th Cir. 1994) ("As a general proposition, delay in seeking preliminary relief cuts against finding irreparable injury."); *Adidas*, 40 F. Supp. 2d at 1282.

From the record before it, the Court concludes that the harm alleged by MNM as to the Design Information is either speculative or compensable in damages as part of a final judgment by this Court. Because MNM cannot establish that it will suffer irreparable harm in the absence of injunctive relief, the Court will not grant a preliminary injunction as to the Design Information.[18]

**C.     Bond**

"The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party to have been wrongfully enjoined or restrained."[19] At the hearing, the Court agreed to allow the parties to submit briefing on the amount of a bond if the Court grants MNM's motion. The Court, however, finds that a bond is not warranted here because the only requested relief the Court is granting is with respect to the "Big Dog Motorcycles, LLC" name. McCloud testified that he has never used the name, is not currently using the name, and does not intend to do so in the future. Therefore, HDM and McCloud will not sustain any damages as a result of the injunction.

**IT IS THEREFORE ORDERED** that MNM's Motion for Preliminary Injunction (Doc. 75) is **GRANTED IN PART AND DENIED IN PART**. During the pendency of this action and until final judgment herein, HDM, Inc., and Derek McCloud and their officers, agents, servants, employees, successors, and assigns, and all those acting in concert or participation with or under authority of or from them, are enjoined from using the entity name "Big Dog Motorcycles, LLC." No bond is required by Plaintiff. All other requested relief is denied.

**IT IS SO ORDERED**.

---

[18] Because MNM has failed to establish irreparable harm, the Court need not address the remaining three factors necessary to grant a preliminary injunction.

[19] Fed. R. Civ. P. 65(c).

Dated this 22nd day of August, 2019.

*Eric F Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE