**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

MNM INVESTMENTS, LLC, )
                              )
       *Plaintiff*, )
                              )
v. )
                              )
HDM, INC. and DEREK MCCLOUD, )
                              )
       *Defendants*. )
_____)
                              )   Case No.: 18-1267-EFM-KGG
HDM, INC., )
       *Counterclaim-Plaintiff*, )
                              )
v. )
                              )
MNM INVESTMENTS, LLC, )
KANSAS MOTORCYCLE WORKS, LLC, )
And MATTHEW MOORE, )
       *Counterclaim-Defendants*. )
_____)

## **MEMORANDUM & ORDER ON PENDING DISCOVERY MOTIONS**

The following discovery motions are currently pending before the Court:

1.    Motion to Compel by MNM (Doc. 121).

2.    MNM's Motion to Compel Discovery (Doc. 129).

3.    Objection to Non-Party Business Records Subpoena (Doc. 134).

The second and third motions listed overlap and relate to the same third-party subpoena. Having reviewed the submissions of the parties, the Court **GRANTS in part** the Motion to Compel filed by MNM (Doc. 121), **GRANTS** the Motion to Compel Discovery filed by MNM (Doc. 129), and **DENIES** the Objection to Non-Party Business Records Subpoena (Doc. 134).

## BACKGROUND

The case arises from an alleged breach of contract, trademark infringement, and counterfeiting brought by MNM, the manufacturer of Big Dog Motorcycles against HDM, a former parts supplier. (Doc. 4, at 15-19.) HDM filed a counterclaim, which includes a claim that it, not MNM, is the owner of the marks at issue. The relationship of the parties and facts/status of this lawsuit have been previously briefed in connection with MNM's Motions for Partial Summary Judgment (Doc. 62) and for Preliminary Injunction (Doc. 76). The procedural history was also summarized in MNM's Motion to Amend the Scheduling Order. (Doc. 111). Those summaries are incorporated herein by reference.

## LEGAL STANDARD FOR DISCOVERY

Fed. R. Civ. P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative

> access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. ***Holick v. Burkhart***, No.16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

## ANALYSIS

**I.  Motion to Compel by Counter Defendants (Doc. 121).**

This motion relates to HDM's responses and objections to Request for Production No. 47 and Interrogatory Nos. 13-16 from MNM's Second Combined Discovery Requests. MNM summarizes the issues as follows:

> Request for Production 47 … asked HDM to produce documents reflecting the history of its sales through eBay of the sorts of products that are the subject of this suit – i.e., Big Dog Motorcycle merchandise of one kind or another; Interrogatories 13 through 16, in turn, comprise a series of contention interrogatories concerning HDM's claim that it is entitled to have whatever Big Dog-related products it wishes manufactured through a specific vendor.

(Doc. 121, at 2.)

**A.  Request No. 47.**

This Request directs HDM to produce its "eBay sales history for sales completed between 2011 and present." (Doc. 121-1, at 10.) MNM contends that the eBay sales records, "regardless of form, including past listings, invoices, and email notifications are relevant and particularly important to MNM's claims that HDM has infringed MNM's trademarks in connection with its sales on eBay." (Doc. 121, at 11.)

HDM initially responded that "[a]fter performing a reasonable inquiry and search, HDM … will produce documents responsive to this Request. HDM notes that eBay currently provides sales history only for the last 90 days. HDM currently has no other eBay sales records in its possession or control." (Doc. 121-1, at 10.) It should be noted that HDM did not object to the Request. (*Id*.)

MNM informed HDM that "eBay makes reports showing sales history available for a substantially longer period of time as a matter of course." (*Id*., at 5.) MNM also suggested HDM refer to reports available through PayPal, HDM's eBay sales history and email notifications that eBay generates by default via its website. *Id*.

Thereafter, HDM provided a supplemental response stating that

> [f]ollowing meet-and-confer negotiations with MNM's counsel, HDM agreed to seek eBay sales history through PayPal records. HDM understands that MNM views sales notification emails from eBay as responsive to this Request and objects to the production of such emails as overly broad and unduly burdensome. Counsel for the

> Parties agreed to table the discussion regarding the burden of eBay email discovery until after HDM inquired as to eBay sales history from PayPal.
> After a reasonable search and inquiry, HDM was able to obtain eBay sales history from PayPal dating from Nov. 26, 2012 through the present, and will produce documents in response to this Request.

(Doc. 121-2, at 3-4.)

MNM acknowledges the sales history includes "what appears to be eBay listing titles," but "does not include other information that should be available to HDM from other sources related to HDM's eBay storefronts – item descriptions, buyer information, shipping information, previous auction listings and their contents, images, and so on." (Doc. 121, at 7.)

Thereafter, MNM requested additional supplementation seeking eBay sales notification emails to HDM. MNM contends that

> up to this point HDM had never denied that the email notifications exist. On the contrary, HDM had explicitly positively affirmed their existence: after all, it could not object (as it did, see Exhibit A-2) that producing those emails would be unduly burdensome without first having assessed that the emails existed and, second, that the effort required to collect and produce them would require inappropriate effort. And that makes sense, as email notifications are enabled by default in eBay and must be manually disabled, while both Mr. and Mrs. McCloud both professed in their depositions to lack aptitude of any kind in dealing with technology, suggesting they would be the last to delve into and alter those settings. Now, however, HDM has reversed its position completely and has announced that the email notifications regarding which the parties have been speaking and corresponding

for months, and which HDM objected it would be unduly burdensome to produce, do not, after all, exist.

(Doc. 121, at 7-8.)

MNM describes HDM's response as "incomplete." (*Id.*, at 12.) MNM continues that "[i]t strains credulity to believe that HDM, who conducts the great majority of its business through eBay.com, has no more extensive a collection of records reflecting those sales than the couple of spreadsheets it has produced thus far." (*Id.*) "Whether the information may be found in invoices, emails, packing slips, internal reports, or written on sheets of notebook paper, MNM is entitled to receive those documents." (*Id.*)

As noted above, HDM did not initially object to Request No. 47. (Doc. 121-1, at 10.) MDM thus argues that HDM's unduly burdensome objection included in the supplemental response is untimely. (Doc. 121, at 12.) The Court finds, however, that if, as a result of the conferral process, a responding party realizes that its interpretation of the requesting party's expectations regarding a discovery response have changed, an "unduly burdensome" objection could become applicable and timely subsequent to the initial response. That is clearly what happened here. As such, the Court finds this objection to be timely. That stated, MDM also contends that the objection is unsupported as there are technical configurations and programs that would HDM to batch download or print e-mails. (*Id.*, at 13.)

6

HDM argues that this portion of MNM's motion seeking to compel HDM to "respond fully" to Request 47 should be denied "because it has already complied with Rule 34 by producing the most complete history of eBay sales records within its control." (Doc. 126, at 9.) HDM points out that Fed.R.Civ.P 34 commands production only of documents that are "in the responding party's possession, custody, or control." (*Id*.) It is well-settled that parties "cannot be compelled to produce documents they do not possess or that do not exist." *Mayhew v. Angmar Med. Holdings, Inc.*, No. 18-2365-JWL-KGG, 2019 WL 5535243, at *7 (D. Kan. Oct. 25, 2019). HDM continues that because it

> did not keep eBay sales history as a regular course of business, [it] made a good faith, reasonable effort to comply with this Request by downloading all sales records for the past 90 days' directly from eBay, and both calling and emailing eBay directly to confirm that no additional sales history was available. HDM initially produced eBay sales history available directly from eBay, showing approximately 1,500 transactions over a 90-day period. After the initial rounds of meet-and-confer with MNM's counsel, HDM went even further to compromise … by seeking eBay sales history from PayPal at MNM's counsel's suggestion. HDM was able to obtain sales records dating from 2012–2019, which is the absolute maximum amount of history available from PayPal. Moreover, sales records prior to December 2014 predate the start of the alleged license agreement at issue in this case. The corresponding document production is nearly 800 pages long, has approximately 38,000 transactions, and includes transaction dates, transaction amounts, and item descriptions. In short, HDM performed its duty under Rule 34 to produce discoverable documents within its control by seeking, obtaining, and

7

> producing the most complete available sales history from eBay and PayPal. MNM cannot demand HDM to do more than its duty under Rule 34.
> The production of eBay sales notification emails cannot be compelled because they do not exist. HDM did not explicitly confirm the existence of eBay sales notification emails during negotiations, but objected to the potential production of thousands of emails as unduly burdensome.

(Doc. 126, at 9-10.)

HDM also contends that MNM's request to compel "past sales listings and eBay invoices" in response to its request for eBay sales records is inappropriate. (*Id*., at 11.) According to HDM, MNM's counsel never mentioned either past sales listings or invoices during meet-and-confer negotiations, but rather focused "solely on PayPal records and notification emails." (*Id*. (citing Doc. 121-8, 121-10).) HDM argues that past eBay listings are unresponsive to Request No. 47 because they are not sales records; rather, "they described items for sale, not actual transactions." (*Id*.) The Court agrees that the eBay listings themselves clearly do not constitute "sales records." The eBay invoices, however, obviously constitute "sales records."

HDM concedes that eBay retains 18 months of sales invoices, but argues that the information is redundant and duplicative of what was previously provided. (*Id*.)

> Importantly … eBay invoices provide no more information than HDM has already provided through the

8

> 789-page record of sales from PayPal. These records
> provide a date, amount, and description for nearly 38,000
> transactions going back seven years (from 2012 to 2019).
> In comparison, eBay invoices would provide essentially
> the same information – date, listing title, transaction
> amount – as is evident in Exhibit D to Plaintiff's Motion,
> but invoices only go back 18 months at the maximum.

(Doc. 126, at 11.)

MNM replies that

> [w]hile those invoices may ultimately reflect the same
> information provided in the PayPal transaction history
> that has already been produced, HDM's subjective belief
> in that regard is no excuse for not producing responsive
> documents. MNM is aware of no case which stands for
> the proposition that a party can withhold responsive
> documents merely because it believes – but has not
> demonstrated – that the same information has been
> provided in some other form.

(Doc. 136, at 7-8.) The Court finds that despite the previous production of related PayPal documents, these eBay documents constitute information from another source and are discoverable.

MNM also replies that "[i]t is clear from HDM's response brief that HDM failed to adequately search for responsive documents when they were first requested" and then "baited MNM into a debate about undue burden, only to later contend that no eBay emails exist when faced with a motion to compel." (Doc. 136, at 7.) MNM argues that this "gamesmanship" is "sanctionable." (*Id.*)

In the Court's opinion, this is not the result of MNM being "baited." Rather, this should be considered a positive result of the meet & confer process – MNM was unsatisfied with HDM's response, so the parties discussed the situation and HDM agreed to provide additional documents. This is the exact type of result contemplated by D. Kan. Rule 37.2.

This portion of MNM's motion is **GRANTED in part**. HDM is instructed to provide the 18 months of eBay sales invoices discussed herein within thirty (30) days of the date of this Order. As for the e-mail notifications, the Court cannot order HDM to produce documents that it contends do not exist.

**B.     Interrogatories 13-16.**

MNM describes this group of Interrogatories as

> a series of contention interrogatories attempting to nail-down the factual and legal basis for HDM's position that one of its vendors, Millennium Machine and Tool, Inc. … has the right to manufacture and sell Big Dog-related parts and accessories to HDM, even if doing so requires the use of the IP that MNM purchased from the original Big Dog manufacturer ('Old Big Dog'). Millennium Machine is a tooling and machine shop that manufactured parts and accessories for Old Big Dog. During the preliminary injunction hearing and Rule 30(b)(6) deposition of HDM, Derek McCloud testified that it was his belief that HDM could buy and sell parts manufactured by Millennium Machine because Mr. McCloud believed Millennium Machine has the right to manufacture and sell any Big Dog-related parts and accessories that it wants.

(Doc. 121, at 8.) MNM sent the Interrogatories "[w]ith this in mind, and given the difficulty in questioning Mr. McCloud on the matter during his deposition … ." (*Id.*)

Interrogatory No. 13 asks HDM to "[s]tate the principal and material facts supporting and the legal basis of Your contention or belief that Millennium Machine and Tool acquired or possesses an ownership interest in any part designs." (Doc. 121-1, at 2.) HDM objected "to the extent" the Interrogatory "calls for information protected by the attorney-client privilege, attorney work-product, or other applicable privilege or protection." (*Id.*) HDM also objected that the Interrogatory "calls for information not within the possession or control of HDM" and "to the extent that it calls for a legal conclusion." (*Id.*) Subject to these objections, HDM responded that it

> understands from conversations with Kris Wondra of Millennium Machine and Tool that Millennium Machine and Tool sued Old Big Dog for nonpayment related to part design and manufacturing. Kris Wondra told HDM that as a result of that lawsuit, Millennium Machine and Tool can make whatever parts it wants that fit Big Dog motorcycles, and sell them to whomever it wants.

(*Id.*)

Interrogatory No. 14 directs HDM to "[s]tate the principal and material facts supporting and the legal basis of Your contention or belief that Millennium Machine and Tool acquired or possesses an ownership interest in any intellectual

property previously owned by Old Big Dog." (*Id*., at 3.)  HDM raised the same objections from Interrogatory 13, objected that Interrogatory No. 14 is "duplicative of Interrogatory No. 13," and then incorporated its response to Interrogatory No. 13. (*Id*.)

Interrogatory No. 15 asks HDM to "[l]ist and describe all Big Dog parts or accessories You believe Millennium Machine and Tool has the right to manufacture." (*Id*.)  HDM raised the same objections as listed above.  HDM responded that it "has no knowledge as to what specific parts or accessories Millennium Machine and Tool has the right to manufacture," "understands that Millennium Machine and Tool can make whatever parts that fit Big Dog motorcycles it wants," and incorporated its response to Interrogatory No. 13.  (*Id*., at 3-4.)

Interrogatory No. 16 asked HDM to "state the principal and material facts… and the legal basis for your contention or belief" as to "each Big Dog part or accessory that you contend or believe Millennium Machine and Tool has the right to manufacture … ." (*Id*., at 4.)  HDM raised the same objections as it did to Interrogatory No. 13 and also objected that No. 16 is duplicative of that prior Interrogatory.  Subject to the objections, HDM indicated that it "has no knowledge as to what specific parts or accessories Millennium Machine and Tool has the right to manufacture" and "understands that Millennium Machine and Tool can make

whatever parts that fit Big Dog Motorcycles it wants." (*Id.*)  HDM also incorporated its responses to Interrogatories Nos. 13 and 15.

HDM ultimately stated that the objections were "prophylactic" in nature and resulted in no information being withheld.  (Doc. 121, at 10; Doc. 121-8.)  Thereafter, MNM requested the objections be withdrawn and provided authority that "contention" interrogatories are not improper.  HDM responded only that "[w]e have reviewed the cases you provided . . . and read them to stand for the proposition that parties may proffer contention interrogatories that call for the application of law to fact. We do not disagree with this point."  (Doc. 121-11, at 2.)  As of the filing of the motion, however, HDM has refused to withdraw the objections.  (Doc. 121, at 10.)

MDM argues that HDM's refusal to withdraw these objections "creates a host of problems.  (*Id.*, at 15.)  Thus, MNM "requests that the Court overrule the same and order the objections stricken."  (*Id.*, at 16.)

MDM is correct that HDM's objections "to the extent" – which offer no further substantiation – are improper.  HDM did not even provide a privilege log.  HDM is also correct that interrogatories requesting the application of law to fact are allowed under Fed.R.Civ.P. 33(a)(2).  Even so, HDM apparently has refused to withdraw the objections.

HDM argues that the objections were made for the following "proper purposes" – "to protect HDM against the possibility that MNM sought purely privileged communications or attorney thought processes; to reinforce the basic principle that HDM could not provide facts that it did not know; and to reinforce the basic principle that a pure legal conclusion is not within the scope of Rule 26." (Doc. 126, at 13.) HDM contends it provided the principal and material facts, and application of those facts to law, supporting its contentions regarding Millennium Machine and Tool's rights." (*Id*.) It also confirmed that no responsive information had been withheld. (*Id*.)

HDM contends that MNM did not complain about the substantive content of these interrogatory responses during meet-and-confer process. (*Id*.) HDM argues that MNM has provided no legal authority requiring it to withdraw "its basic protective objections." (*Id*., at 14.)

It is well-established that "[a] proper objection to a discovery inquiry should state the specific grounds for the objection." ***U.S. ex rel. Minge v. Tect Aerospace, Inc.***, No. 07-1212-MLB-KGG, 2011 WL 1885934, *3 (D. Kan. May 18, 2011) (reaching this conclusion in regard to responses to discovery requests).

"Such boilerplate objections are useless and should be avoided." *Id*. The Court finds this analysis to be applicable to responses to third-party subpoenas.[1]

Further, the undersigned Magistrate Judge has previously held that a party's "use of 'to the extent' language ... constitute[s] an improper condition objection" and "such conditional responses are 'invalid,' 'unsustainable,' and 'violate common sense.'" **Barcus v. Phoenix Insurance Co.**, No. 17-2492-JWL-KGG, 2017 WL 1794900, at *2-3 (D. Kan. Apr. 16, 2018). The Court finds objections at issue were unsubstantiated and unsupported "to the extent" boilerplate objections. The objections are improper and are overruled.

This portion of MNM's motion is thus **GRANTED**. The Court orders the objections to be withdrawn. HDM is directed to serve verified, supplemental responses within thirty (30) days of the date of this Order.

**II.  Plaintiff's Motion to Compel Discovery (Doc. 129).
Objection to Non-Party Business Records Subpoena (Doc. 134).**

As stated above, these motions overlap. The Motion to Compel is directed at the same subpoena that is the subject of the objection to the subpoena of third-

---

[1] Courts in this District have "long recognized that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34." **Parker v. Delmar Gardens of Lenexa, Inc.**, No. 16-2169-JWL-GEB, 2017 WL 1650757, at *3 (D. Kan. May 2, 2017) (citing **Martinelli v. Petland, Inc.**, No. 10-mc-407-RDR, 2010 WL 3947526, at *3 (D. Kan. Oct. 7, 2010) (internal citations omitted); **Martin v. Grp. 1 Realty, Inc.**, No. 12-2214-EFM-DJW, 2013 WL 3322318, at *2 (D. Kan. July 1, 2013)).

party business records. (*See* Doc. 129 and 134). The subpoena was served by Plaintiff MNM on third-party Millennium Machine and Tool ("Millennium").

The parties spend a significant amount of time arguing as to whether the subpoena was properly served, whether objections were lodged in time, etc. In the interest of judicial economy, rather than deal with these technical issues, the Court will address the substance of the information sought by the subpoena.

The following are the categories of documents sought by the subpoena at issue:

>1. Communications during the Relevant Period with Derek McCloud, Donna McCloud, HDM, Inc., or any employee, agent, or independent contractor of Derek McCloud, Donna McCloud, or HDM, Inc.
>
>2. Documents Relating to any agreements with Derek McCloud, Donna McCloud or HDM , Inc., or any employee, agent, or independent contractor of Derek McCloud, Donna McCloud, or H M , Inc.
>
>3. Documents Relating To your sale or manufacture of any products during the Relevant Period that display any of the Marks either on the packaging or on the product itself.
>
>4. Agreements with Big Dog Motorcycles, LLC, Motorcycle Enterprises, LLC, or Wichita Motorcycles, LLC.
>
>5. Documents Relating To the resolution, settlement, or other disposition of the lawsuit captioned Millennium Machine and Tool, Inc. v. Big Dog Motorcycles, LLC, Case NO. 14 LM 15233, in the District Court of Sedgwick County, Kansas.

16

> 6. Documents Relating to Your alleged right to manufacture parts or accessories for Big Dog Motorcycles.
>
> 7. Documents Relating To any litigation or dispute between Derek McCloud, Donna McCloud, or HDM, Inc., on the one hand, and MNM Investments, Inc., Kansas Motorcycle Works, LLC, or Matt Moore on the other.
>
> 8. Documents Relating To revenue or other value derived from the sale or marketing of products that display any of the Marks either on the packaging or on the product itself.
>
> 9. Documents Relating To the design, repair, maintenance, service, manufacture, or fabrication of either Big Dog motorcycles or parts or accessories utilized in connection with Big Dog motorcycles, including, but not limited to, photography, blueprints, mock ups, templates, models, prototypes, exploded parts views, part drawings, and CAD files.

(Doc. 134, at 8-9.)

Millennium argues that the subpoena "seeks extensive documentation from January 1, 2014, to the present," which Millennium contends is "unduly burdensome or seeks proprietary and or trade secret information." (Doc. 134, at 2.) Millennium has not, however, indicated *how* the stated time period is "unduly burdensome." As stated above, "[a] proper objection to a discovery inquiry should state the specific grounds for the objection." ***U.S. ex rel. Minge v. Tect Aerospace, Inc.***, 2011 WL 1885934, at *3. Millennium also fails to explain the

type of "proprietary" or "trade secret" information involved. The Court instructs Millennium to respond and avail itself of the Protective Order entered in the case when proprietary or trade secret information is implicated.

Millennium continues that Requests Nos. 6 and 9 are vague, but indicates that no such documents exist. (*Id.*) The Court overrules the unsubstantiated, boilerplate vagueness objection.

As to Request No. 9 specifically, Millennium argues that if documents are sought outside the relevant time period, such documents are proprietary and protected as trade secrets not subject to disclosure. (*Id.*) Millennium also informed MNM that there were no documents responsive to Requests Nos. 2, 3, 4, 6, 7, 8, and 9. (*Id.*)

According to MNM, the main substantive disagreement between the parties appears to be the use of the term "relevant period," which is defined as January 1, 2014[,] through present." (Doc. 140, at 9.) According to MNM,

> Millennium's brief and email correspondence demonstrate that Millennium has applied the 'Relevant Period' to every single category of documents being requested, limiting its inquiry accordingly. That term, however, is used only in request numbers 1 and 3. It does not apply to any other category of documents being requested. Thus, Millennium's qualified representation that it has no documents responsive to MNM's requests nos. 2, 4, 5, 6, 7, 8, and 9, does not appear to be backed by a proper inquiry and does not accurately respond to the requests as they are actually drafted.

(Doc. 140, at 9.) MNM continues that Millennium's only other "fallback is that the documents responsive to requests nos. 5 and 9 are confidential, proprietary, and constitute trade secrets." (*Id*.)

MNM correctly points out that Millennium has the burden to establish that the subpoena should be quashed as the party resisting the discovery. (*Id*., at 9-10 (citing **Holick v. Burkhart**, No. 16-1188-JTM-KGG, 2017 WL 3723277, at *6 (D. Kan. Aug. 29, 2017) (internal citation omitted) (conclusion reach in context of third-party subpoenas).) MNM argues that Millennium has not substantiated its objections. MNM has also provided Millennium with a copy of the Protective Order entered in this case, which would allow Millennium to designate documents as "confidential" or "attorneys eyes only" as it sees fit. (*Id*., at 10.)

The Court agrees that the objections stated in response to the subpoena are clearly boilerplate objections that are not properly substantiated. As stated above, "[a] proper objection to a discovery inquiry should state the specific grounds for the objection." **U.S. ex rel. Minge v. Tect Aerospace, Inc.**, No. 07-1212-MLB-KGG, 2011 WL 1885934, *3 (D. Kan. May 18, 2011). Millennium, as the party resisting discovery, has not met its burden to establish that the subpoena should be quashed. **Holick**, 2017 WL 3723277, at *6.

As such, the Court **GRANTS** the Motion to Compel (Doc. 129) filed by MNM and **DENIES** the Objection/Motion to Quash filed by third-party

Millennium Machine and Tool (Doc. 134).  In so holding, the Court instructs

Millennium to provide a supplemental response to the subpoena within thirty (30)

days of the date of this Order.  The Court instructs Millennium that only categories

1 and 3 are limited by the stated the "relevant period."  As MNM explains:

> When drafting the subpoena, MNM recognized that
> requests numbers 1 and 3 were arguably broad.  Thus, in
> an effort to avoid undue burden on Millennium, MNM
> limited request numbers 1 and 3 to the "Relevant
> Period."  The remainder of MNM's requests were more
> targeted and required no temporal limitation given the
> nature of the documents requested.

(Doc. 140, at n.5.)

    IT IS THEREFORE ORDERED that the Motion to Compel filed by MNM

(Doc. 121) is **GRANTED in part**, the Motion to Compel Discovery filed by

MNM (Doc. 129) is **GRANTED**, and the Objection to Non-Party Business

Records Subpoena (Doc. 134) is **DENIED**.

    **IT IS SO ORDERED**.

    Dated at Wichita, Kansas, on this 24th day of March, 2020.

                                       S/ KENNETH G. GALE
                                       KENNETH G. GALE
                                       United States Magistrate Judge